## S90A0544. FULTON COUNTY et al. v. WALLACE.
(393 SE2d 241)

SMITH, Presiding Justice.

We granted Fulton County's application for discretionary appeal[1] and posed the following question to the parties.

> "Whether the remedy of inverse condemnation exists in this state for a finding of unconstitutional zoning? Please see Cobb Co. v. Wilson."

We find that *Cobb County v. Wilson,* 259 Ga. 685 (386 SE2d 128) (1989), contains the available remedies, and that inverse condemnation is not an available remedy under the facts of this case. We therefore reverse and remand with directions.

The appellee, Mr. Wallace, purchased approximately 32 acres of property in north Fulton County in 1985. The property consists of two parcels, one approximately twenty-three acres, and the other approximately nine acres. The property had been subject to the Rivermont Community Unit Plan designation (C.U.P.) since it was zoned in 1971. Rivermont is a residential community that directly abuts the nine-acre tract to the north. Rivermont was developed under the C.U.P. designation and the subject property was originally intended to be part of the Rivermont Community. Under the C.U.P. designation the larger tract was zoned for conditional commercial use which restricted its use to the development of village-type shops and the smaller tract was restricted to apartment development with a maximum density of twelve units per acre.

In June 1988 an application was filed seeking to have the entire thirty-two-acre parcel rezoned to a C-1 classification to permit the development of a commercial shopping center. The application was denied by the appellants, Fulton County Board of Commissioners (Board), and the appellee filed an action in the Fulton County Supe-

---

[1] In *Trend Development Corp. v. Douglas County,* 259 Ga. 425 (383 SE2d 123) (1989), this Court held that all zoning cases must come to this Court by way of discretionary application.

rior Court. The trial court entered an order declaring the zoning unconstitutional and ordered the appellants to rezone the property in a constitutional manner.[2]

During the hearing on the rezoning before the board, the board members discussed the fact that there was a risk that the trial court could declare the property free from all zoning if it disagreed with the board's rezoning decision. The board members were cautioned to be "as attentive as possible and to make an effort to arrive at a decision which we feel, upon the best advice of staff and counsel, is a constitutional decision. . . ." The staff in cooperation with the county attorney developed a recommendation to allow the larger tract to have the village-type shop restriction lifted and the smaller tract to have the apartment restriction lifted. The staff spokesperson indicated that the appellee had been involved in the proposal, but that he did not agree with the plan for the smaller tract.

The board also heard from representatives of the Rivermont Community who strongly opposed the rezoning of the approximately nine-acre parcel to the C-1 category and endorsed the planning staff's and county attorney's compromise development plan. They strenuously argued that the compromise would be the only way to prevent the destruction of the Rivermont owners' reliance on the C.U.P. classification and the residential character of the Rivermont Community.

It became obvious during the hearing that there was a conflict in the interpretation of the trial court's order. The county attorney interpreted the court order as requiring the board to remove the restriction which limited development of the approximately nine acres to apartment development. The attorney for the appellee disagreed with the interpretation but when questioned by the board as to whether

---

[2] May 23, 1989 order states in pertinent part:

ORDER

Upon the Findings of Fact and Conclusions of Law hereinabove set out, it is the Order of this Court that the portion of the C.U.P. zoning which restricts approximately 9.46 acres of the Plaintiff's property to apartment development is unconstitutional, null and void as applied to the Plaintiff's property.

It is further the Order of this Court that the restrictions or conditions placed upon the approximately 22.92 acre portion of the Plaintiff's property which is zoned to the C-1 zoning classification are unconstitutional, null and void.

On July 10, 1989 the trial court entered a corrective order and included in that order was the following:

There was expert testimony that the 9.46 acres could not be economically developed or marketed for apartment type usage . . . that the portion of the property restricted to multi-family use was not suitable for apartment or condominium development of any type, that the entire property was ideally suited for commercial development of the type requested, that the development of the site as proposed would not have a negative impact on any adjacent residential property. . . .

there were any findings of fact that supported his interpretation he stated: "If you're asking if there's a specific finding that any residential, which would include a single family, would also be unconstitutional, I don't believe that there is." The board thereafter voted to remove the two restrictions identified by the trial court as unconstitutional. The restriction on the larger tract which limited its use to village-type shops was lifted and the density was increased. The restriction which limited the smaller tract to apartment development was removed, thus, allowing the tract to be used for any residential purpose including apartments, single family townhouses and cluster homes up to a maximum density of twelve units per acre.

On October 24, 1989, after a hearing, the trial court found the zoning on the smaller tract unconstitutional and further found that the board's actions amounted to an abuse of its police power. Through a corrective order the trial court awarded damages to the appellee under a theory of inverse condemnation. The appellee was awarded $252,014.13 plus $570.19 per day beginning September 21, 1989 and continuing each day thereafter until such time as the appellants rezoned the property to a constitutional classification.

A majority of this Court in *Gradous v. Bd. of Commrs.*, 256 Ga. 469, 470 (349 SE2d 707) (1986) stated:

> Under the eminent domain provision of the Georgia Constitution there may be no damage to the property of an individual for a public purpose without there being first compensation. In the context of government regulation, including zoning, this has been construed to mean that actions of the governing authority which exceed the police power will rise to the level of condemnation and require compensation. . . .

Only when the governing authority exceeds the police power in regulating land use for zoning does the governing authority run afoul of the constitutional prohibition against condemnation of land for a public purpose without just compensation. Id.

When zoning boards are considering the rezoning of "fringe areas" such as the nine-acre tract involved in this appeal, the necessities of the case and the safeguard of the public interest are heightened. This Court has recently expressed considerable concern with the rezoning of "fringe areas." In *Jebco Ventures v. City of Smyrna*, 259 Ga. 599, 602 (385 SE2d 397) (1989) this Court stated:

> [A]s noted in the *Holy Cross* case, [257 Ga. 21 (354 SE2d 151) (1987)] in zoning controversies involving "fringe areas" — that is, property which is zoned residential and which lies on the periphery of a residential zoning district, with en-

croaching commercial development taking place on adjacent property — the local governing body is the "more appropriate one" to decide, in the "best interests of the locality and its citizens," where "the line as to these encroachments" should be drawn. 257 Ga. at 23.

The property involved in this appeal is not only in a "fringe area," it is property that has been an integral part of a C.U.P. and a change in character of the subject property will have an impact on the property that was developed in accordance with the C.U.P. and those owners who have relied upon the continuing character of the C.U.P. The above cited cases convince us that when considering changes in "fringe areas" or property that was a part of a C.U.P. the balance favors even broader discretion in the local zoning authority, therefore, their efforts to reach a compromise while remaining under the trial court's jurisdiction will not be viewed as abuse of the board's police power.

Pretermitting whether or not a board's failure to rezone property to a constitutional classification as interpreted by a trial court could ever amount to inverse condemnation under Georgia law, we find that the trial court erred in awarding damages in this case under the theory of inverse condemnation. A review of the rezoning hearing on August 2, 1989 indicates that while there were differing opinions on what the trial court required the board to do, the board acted within its police power in attempting to reach a compromise that would be satisfactory to the court, the appellee, the more than 850 unit owners of the Rivermont Community, and the integrity of the C.U.P. Therefore, we find that the trial court erred in holding that the board's actions in analyzing and rezoning the nine-acre portion of the appellee's property was an abuse of its police power that rose to the level of an unconstitutional taking of the appellee's property.

The damage award is reversed and the case is remanded to the trial court with directions that the available remedies for the zoning board's failure to properly analyze and rezone property in accordance with the trial court's order to constitutionally rezone property are found in *Cobb County v. Wilson,* supra, 259 Ga. 685.

*Judgment reversed and remanded. All the Justices concur.*

DECIDED JULY 5, 1990 —
RECONSIDERATION DENIED JULY 26, 1990.

*Susan B. Forsling, Elizabeth E. Long, Franklin N. Biggins,* for appellants.

*Peterson, Dillard, Young, Self & Asselin, Dick Wilson, Jr.,* for appellee.

*Walter E. Sumner, George E. Butler II, Seth G. Weissman, David A. Herrigel, James F. Grubiak, Robert L. Zoeckler, David D. Blum,* amici curiae.